UNITED STATES DISTRICT COURT
for the
District of Arizona

In the Matter of the Search of )
)
**1996 Ford Econoline Van,** )  Case No.  22-4077mb
**Arizona License 4DA6A2A** )
)
)

## ELECTRONICALLY ISSUED SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer.

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of  Arizona._____
*(identify the person or describe the property to be searched and give its location)*: **See Attachment A.**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: **See Attachment B.**

I find that the affidavit(s), or any recorded testimony, have been communicated by reliable electronic means and establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____03/17/2022_____
                                                                                                         *(not to exceed 14 days)*

[X] in the daytime 6:00 a.m. to 10 p.m.      [ ] at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the search warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave a search warrant copy and receipt at the place where the property was taken

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge

  Any U.S. Magistrate Judge in the District of Arizona  .
                          *(Name)*

[ ] I find that immediate notification may have an adverse result as specified in 18 U.S.C. §3103a (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*   [ ] for _____ days *(not to exceed 30)*.
                                                                                    [ ] until, the facts justifying, the later specific date of _____.

*Camille D. Bibles*  Digitally signed by Camille D. Bibles
                     Date: 2022.03.03 17:13:45 -07'00'

Date and Time Issued: _____   _____
                                                                       *Judge's Signature*

City and State:   Flagstaff, Arizona         Camille D. Bibles, United States Magistrate Judge

## ATTACHMENT A – THING TO BE SEARCHED

**Description:** A white 1996 Ford Econoline Van, Arizona license plate 4DA6A2A. (The Arizona license plate is registered to Jessica Marie Russo; however, there was an open, signed title in the vehicle suggesting that it had been sold. The registration expired on July 15, 2021.)

**Location:** The van is located at A Tow Truck towing yard, 573 Industrial Drive, Camp Verde, Arizona 86322, which is in the District of Arizona.

# ATTACHMENT B – THINGS TO BE SEARCHED FOR AND SEIZED

1. Any documents, records, letters, and/or notes with Jonathan Kip Medford, John Ander Smith, Jessie, Jessica Marie Russo, and/or Sarah Ann Shea's name on it/them.

2. The title to and any sales documents for the vehicle.

3. Any computers, tablets, or cellular phones or devices located in the vehicle, including any iPhone, smart phone, cell phone, iPad, or computers (e.g., laptops). Any such devices will be seized but separate search warrants will be sought if such devices are located within the vehicle.

4. Any photographs of persons located within the vehicle.

5. Any clothing that appears to belong to an adult male. (The clothing will primarily be photographed.)

6. Indicia of ownership, occupancy, and/or use of the van, including mail (e.g., bills) that may be addressed to the occupant(s) or owner(s) of the van; driver's licenses and identification cards; vehicle titles; vehicle registration; vehicle sales documents; receipts (e.g., gas or service receipts); and insurance cards for the van.

7. Any marijuana and/or paraphernalia (e.g., pipes, bowls, bongs, pushers, rolling papers).

8. As part of the search and documentation of the execution of the search warrant, the van, its contents, and any things seized will be photographed.

| Return | | |
|---|---|---|
| Case No.: 22-4077mb | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

### Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing Officer's Signature*

_____
*Printed Name and Title*

FAX or Internet

# UNITED STATES DISTRICT COURT
for the
District of Arizona

In the Matter of the Search of:
**1996 Ford Econoline Van,
Arizona License 4DA6A2A**

)
)  Case No. 22-4077mb
)
)

(Original To Be Filed With Court)

## ELECTRONIC APPLICATION FOR SEARCH WARRANT

I, the undersigned, a federal law enforcement officer, request an electronic search warrant and state under penalty of perjury that I have reason to believe that on and within the following person or property:
**See Attachment A.**
located in the _____ District of _____ Arizona _____, there is now concealed:
**See Attachment B.**
The basis for the search under Fed. R. Crim. P. 41(c) is:

[X] evidence of a crime;

[X] contraband, fruits of crime, or other items illegally possessed;

[X] property designed for use, intended for use, or used in committing a crime;

[ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Sections | Offense Descriptions |
|---|---|
| 18 USC § 111(a) | Assault on Federal Officer with Physical Contact |
| 18 USC § 1001(a)(2) | Making False Statement or Fraudulent Representation |
| 21 USC 844(a) | Unlawful Possession of a Controlled Substance |

The application is based upon the following facts:
[X] Continued on the attached sheet (see attached **Affidavit**).
[ ] Delayed notice of _____ days (give exact ending date if more than 30 days) days:
is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by: /s AUSA Paul Stearns
**Pursuant to 28 U.S.C. §1746(2), I declare under penalty of perjury that the foregoing is true and correct.**

CODA WITT
Digitally signed by CODA WITT
Date: 2022.03.03 15:08:11 -07'00'

*Applicant's Signature*

Executed on March 3, 2022

Coda Witt, Special Agent, USFS
*Printed Name and Title*

__X__ Sworn by Telephone
Date/
Time: _____

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2022.03.03 17:13:16 -07'00'

*Judge's Signature*

City and State:  Flagstaff, Arizona

Camille D. Bibles, United States Magistrate Judge
*Printed Name and Title*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

## ELECTRONICALLY SUBMITTED REDACTED AFFIDAVIT

Your affiant, Coda P. Witt, a Special Agent with the United States Forest Service, states under oath as follows:

1. Your affiant is employed by the United States Forest Service (USFS) Law Enforcement and Investigations (LE&I) in Flagstaff, Arizona. Your affiant is assigned as a Special Agent within the Coconino National Forest, which is in the District of Arizona. Your affiant is a graduate of the Federal Law Enforcement Training Center for the Criminal Investigator Training Program. Your affiant is also a graduate of the Land Management Police Training from the Federal Law Enforcement Training Center. Your affiant has 14 years of federal law enforcement experience with the USFS.

2. The information contained in this affidavit is from my personal knowledge, as well as information from others including those set forth further below. Additionally, in preparing this affidavit, your affiant has reviewed the probable cause statements from the victim-officer in this case, as well as his body camera footage pertaining to the assault. Because this affidavit is being made to establish probable cause, your affiant has not listed every fact known regarding this investigation.

## Introduction

3. This case involves an assault (with physical contact) on a federal law enforcement officer by Jonathan Kip Medford (Medford). The assault took place after Medford and a female subject, Sarah Ann Shea (Shea), were contacted by the officer in Coconino National Forest. During the contact, Medford lied about his name, was uncooperative (refusing to follow commands), and eventually charged at and assaulted the officer. During the assault, Medford repeatedly attempted to disarm the officer. The officer eventually got free, and Medford fled the area on foot.

4. The female accompanying Medford, Shea, was present when Medford provided a false name to the federal officer. While Shea had been "stopped" (i.e., contacted and told of the investigation) by the federal law enforcement officer as part of the investigation, she fled the scene after Medford assaulted the officer. Shea did not call or otherwise notify the police, and she did not assist the officer when he was assaulted. Shea was pulled over shortly thereafter by an officer from the Sedona, Arizona Police Department. At the time, Medford had not been captured, he was on the run, and his identity was unknown. Shea told a Yavapai County Sheriff's Office deputy that the man she had been with – who assaulted the federal officer – was John Smith. Based on the investigation, it is believed that Shea knew the true identity of Medford but concealed and/or lied about his name to law

enforcement officers. Shea was detained and ultimately arrested on federal charges in Case No. 22-04053MJ-01-PCT-CDB.

5. The assault/incident took place on February 15, 2022. Medford was located by Jerome Police Department officers on February 16, 2022, and he was arrested on outstanding state warrants. A federal arrest warrant was issued for Medford in Case No. 22-4056-MJ-CDB. One prior search warrant has been obtained in Case No. 22-4063-MB.

6. The purpose of the proposed search warrant is to obtain additional information identifying the occupant(s) of a Ford van that was at Medford and Shea's campsite where LEO C.R. was assaulted. It is believed that information about the ownership and/or use of the van will further identify Medford and support false statements by him (and to some extent Shea), including his use of a false name and who he claimed they were camping with. (Such information will also further corroborate Medford's illegal camping.) The van to be searched is a 1996 Ford Econoline van, Arizona license plate 4DA6A2A, and it is particularly described in Attachment A. It is believed that Medford was driving and/or occupying this van; however, he claimed that the van belonged to a female (Jessie) who was hiking and who never returned during the hours that this matter was being investigated. The van was eventually towed, and no one has claimed the van as of this affidavit.

## Investigation/Probable Cause

7.    On February 15, 2022, USFS Law Enforcement Officer C.R. (LEO C.R.) responded to a report of vehicles blocking National Forest System Road (NFSR) 525D on the Red Rock Ranger District, Coconino National Forest, in the District of Arizona. Upon arrival in the area, LEO C.R. contacted multiple groups of individuals in the area. The last contact LEO C.R. made was with two adult individuals, a male and a female, who were later identified as Jonathan Kip Medford (Medford) and Sarah Ann Shea (Shea). Medford and Shea had two vehicles parked just off the road, a Toyota Prius and a Ford van. They had two dogs with them that were off leash. *See* 36 C.F.R. § 261.8(d) (dog off leash). It appeared that Medford and Shea had camped in the area in violation of USFS regulations. 36 C.F.R. 261.58(e) (camping where prohibited).

8.    During the contact, LEO C.R. informed the two subjects that they were in violation of the no-camping order. LEO C.R. attempted to positively identify the two subjects. The male subject gave LEO C.R. the name of John Ander Smith – he said he had a Florida identification card that was not with him – and the female subject gave the name of Sarah Ann Shea. LEO C.R. gave the names and dates of birth (DOB) to the Yavapai County Sheriff's Office dispatch (YCSO), and YCSO dispatch informed LEO C.R. that there was no return for a male subject by that name and DOB. (Shea's information did return.) While waiting for YCSO dispatch to

gather the information, LEO C.R. also gave YCSO dispatch the license plates for both vehicles.

9. LEO C.R. asked Medford and Shea who the vehicles at the campsite belonged to. Shea stated the Toyota Prius belonged to her, and Medford told LEO C.R. that the Ford van belonged to a friend named Jessie. Medford said that Jessie went on a hike approximately two hours prior, and that she goes on long hikes. Medford said that he and Shea had come out the night before, met their friend (Jessie), and stayed the night there with her. Medford also told LEO C.R. that he was in the Prius with Shea; Shea nodded in agreement. It should be noted that Shea was present when Medford made these statements to the LEO about Jessie, the Ford van, and how long they had camped in the area.[1]

10. A short while later, LEO C.R. informed "Smith" (Medford) that he was being detained and not free to leave so that the LEO C.R. could confirm Smith's identity. LEO C.R. instructed Medford to turn around and place his hands behind his back. Medford initially turned around and placed his hands behind his back. He then became verbally non-compliant and turned around facing LEO C.R. Medford told LEO C.R. that he was not going to be handcuffed, and Medford began to walk

---

[1] It should be noted that after Medford assaulted and fled from LEO C.R., no one (including a person named Jessie) came back to the van and claimed ownership of it or any of the property in the camp or van. Likewise, no one named Jessie came back to the area from a hike. Importantly, following the assault, law enforcement officers were at the scene for approximately 12 hours.

away from LEO C.R. saying something to the effect of, "what the fuck bro ..." Medford ignored LEO C.R.'s repeated commands, including not to walk away.

11. LEO C.R. pulled his OC spray (i.e., pepper spray) from his duty belt. At the time, based on your affiant's review of LEO C.R.'s body camera video, Medford appeared to be approximately 15 feet from LEO C.R. LEO C.R. told Medford not to walk away and to spread his feet, and Medford said something to the effect of, "or what." At that point, Medford turned toward LEO C.R. in an aggressive manner. Fearing an imminent attack, LEO C.R. deployed his OC spray on Medford. Medford then charged LEO C.R. as LEO C.R. backed up. (Based on Medford's demeanor and actions, LEO C.R. had removed his OC spray from his belt as Medford became more and more uncooperative. Thus, LEO C.R. was able to spray Medford as he started charging forward, which happened very quickly.) Medford then stated, "Fuck You" and pulled his arm back. Based on your affiant's review of LEO C.R.'s body camera video, it appeared that Medford was trying to punch LEO C.R. as Medford was charging toward the officer.

12. Medford grabbed ahold of LEO C.R. and the two fell to the ground. During the time LEO C.R. and Medford were on the ground, Medford attempted to choke LEO C.R. but was not fully successful. LEO C.R. felt Medford grab ahold of his duty weapon, which was still secured in the officer's holster. As LEO C.R. was laying on the ground, he could feel Medford grab ahold of his duty weapon again. Medford began to pull on the duty weapon, attempting to remove it from the holster

but it did not come out. Medford then told LEO C.R. something to the effect of, "Just let it happen." LEO C.R. was ultimately able to free himself from Medford, and LEO C.R. was able to get to his feet.

13. Medford began to flee from LEO C.R. Medford said something to the effect of the following to Shea: "Go, you don't want to be a part of this." LEO C.R. tried to unholster his duty weapon, but the holster was malfunctioning due to issues from the struggle with Medford. LEO C.R. then pulled a backup pistol. Medford told LEO C.R. that he was going to have to shoot him (Medford). LEO C.R. notified YCSO dispatch by radio that Medford was fleeing and was wearing a gray long-sleeved shirt, jeans, and possibly a black neck gator. LEO C.R. later informed incoming law enforcement units that Medford was also wearing a cloth belt and a pair of low top sneakers.

14. LEO C.R. gave chase but lost sight of Medford. Thus, LEO C.R. discontinued the search and returned to secure his patrol vehicle. Later, additional police units arrived to assist in attempting to locate Medford. As stated above, during the entire time of the search, nobody made any attempts to contact law enforcement about the van or come to the scene to retrieve the van as their property. (The Arizona license plate on the van is registered to Jessica Marie Russo; however, there was an open, signed title in the vehicle suggesting that it had been sold. The registration was also expired. Attempts to contact Russo have so far been unsuccessful.)

15. Medford fled on foot and was not captured until the next day. He was arrested and booked into the Yavapai Detention Center for state warrants out of Yavapai County. Shea fled the area during this incident, and she was later located by local law enforcement officers. Shea was subsequently arrested on misdemeanor federal charges, including interference for fleeing the stop. It should be noted that when Shea was stopped by local law enforcement officers, she told the officer that the person she had been camping with was John Smith.

16. LEO C.R. was (and still is) employed with the USFS as a law enforcement officer. He was in uniform and had responded to the area in a marked USFS LEO vehicle. LEO C.R. was working in the course and scope of his duties as a law enforcement officer when he was assaulted by Medford. LEO C.R. sustained injuries, including scrapes and cuts, during the assault by Medford. LEO C.R. also has neck and wrist pain as a result of the assault. During the incident, Medford attempted to forcibly remove LEO C.R.'s firearm (a pistol) from LEO C.R.'s duty holster.

17. Medford was identified through (among other things) photographs and in comparison to body camera video from LEO C.R.'s body camera. It should be noted that LEO C.R.'s body camera was dislodged by Medford during his assault of LEO C.R.; however, the initial attack can be seen on the body camera and then heard. LEO C.R. commented at least twice during the assault that Medford was trying to get his (LEO C.R.'s) gun.

18.     A police K9 team out of Gila County was asked to assist with the search of Medford. Before the K9 search began, the K9 handler, Detective L. Kerszykowski, ran his K9 around the Ford van. The K9 gave a positive alert of narcotics at the passenger front door. (The K9 was not trained to detect marijuana because possession of small amounts of marijuana has been legalized by the State of Arizona. However, marijuana is illegal federally under 21 U.S.C. § 844.) During the search for narcotics, a cellular phone was located on the front driver seat of the vehicle along with a crossbow, knives, and a spear.[2] Several pairs of men's shoes, along with men's clothing, were observed inside the van. No narcotics were found in the van. However, a small amount of marijuana, as well as drug paraphernalia, was observed in the van. An open vehicle title was also discovered in the van.[3]

---

[2] Medford had a knife in a sheath when he was contacted by LEO C.R. However, at one point, when LEO C.R. commented about the knife, Medford pitched the knife into the nearby shrubbery. Based on the contents observed in the van, that the Prius belongs to Shea (who fled in it), that the van was at Shea and Medford's camp, and that no one else was observed in the camp (or returned to the camp), the logical inference is that Medford was driving, using, and/or occupying the Ford van.

[3] Prior to your affiant's arrival at the scene of the assault, YCSO deputies did a quick visual search of the van for any other occupants. No one was observed in the van; however, at that time, they observed male clothing, knives, and drug paraphernalia in the van. A subsequent search of the vehicle was conducted by LEO C.R. and a YCSO deputy looking for documents to identify the male subject who had fled and had not yet been identified. During that search, LEO C.R. observed a marijuana pipe with suspected marijuana in the bowl, as well as the title to the vehicle. The title was taken from the vehicle in order to attempt to identify "Smith," who had assault LEO C.R. and fled. Your affiant was handed the title to the van by a YCSO deputy during a subsequent search of the vehicle for narcotics (after the K9 alerted on the vehicle). Your affiant was informed that the title was located on the front passenger seat. The title to the van had been signed by the registered owner, Jessica Marie Russo (Russo), as if she had sold it but there was no signature for the buyer. Thus, it was essentially an open title. Before the vehicle was towed, your affiant

19. Medford was arrested by the Jerome Police Department on February 16, 2022 on his outstanding state warrants. Your affiant, along with USFS Captain Pederson, spoke with Medford on the evening of February 16, 2022, after reading him the Miranda warning. In summary, Medford admitted that he had been involved in an incident with a Forest Service LEO. Medford stated that USFS LEO sprayed him (Medford) with pepper spray, and that he got into a physical altercation with the LEO. Medford claimed that the USFS LEO assault him (Medford). Medford admitted that he left the area on foot.

20. During the interview, Medford claimed that he has lots of "skills," including martial arts training and wilderness survival training. He said something to the effect of, 'No one can find me in the woods.' Medford also said something to the effect that if your affiant and Captain Pederson would let him out of the handcuffs, we could fight right now. Your affiant and Captain Pederson declined.

21. On March 1, 2022, your affiant called Lieutenant John Johnson (Lt. Johnson) of the YCSO regarding the information he received from Shea when she was stopped and arrested by Sedona Police after she fled the scene as described above. Lt. Johnson stated that when he arrived at the traffic stop, Shea was in

---

left the title on the front passenger seat where the deputies had located it. It should be noted that the license plate on the van came back to Russo, not Medford. Thus, assuming Medford had purchased the van from Russo, he was driving the van with illegal plates (and expired registration). The deputies (and your affiant) did not seize the marijuana from the vehicle during the search for narcotics. Thus, your affiant is requesting permission to seize the marijuana and paraphernalia from the vehicle.

- 10 -

handcuffs. During his contact with Shea, Lt. Johnson read Shea the Miranda warning before asking her questions related to the assault on LEO C.R. Lt. Johnson asked Shea who she was with at the scene in the forest, and she told Lt. Johnson, "John Smith."

### Things to be Searched for and Seized

22. Your affiant is seeking to search the van described in Attachment A for evidence pertaining to violations of 18 U.S.C. §§ 111 (assault on a federal officer), 1001 (false statements), and 21 U.S.C. § 844 (unlawful possession of marijuana. The things to be seized are particularly described in Attachment B and include things related to Medford's identity and false statements to LEO C.R. and the unlawful possession of marijuana.

23. In particular, your affiant is seeking to search the van for indicia of ownership, occupancy, and/or use. Such information may further identity Medford (or others connected to Medford) and provide additional evidence of false statements, including about his name, date of birth, and the ownership, use, and/or occupancy of the van. Such indicia may include such things as: the cell phone observed in the van, as well as any other electronics (e.g., iPad, laptops, smart phones); clothing (i.e., clothing that appears to belong to an adult male); mail (e.g., bills) that may be addressed to the occupant(s) of the van; driver's licenses and identification cards; vehicle titles; registration; insurance cards for the van; items with Medford, Smith, Jessie, Russo, and/or Shea's name(s) on them; and any

photographs found in the vehicle. Your affiant is also seeking permission to search for and retrieve the suspected marijuana in the van, as well as paraphernalia (e.g., pipes, bongs, pushers). Additionally, as part of the search and documentation of the execution of the search warrant, your affiant will photograph the van, its contents, and any things seized. *See also* Attachment B.

### Conclusion

24. The events described above occurred within the District of Arizona on February 15, 2022. Based on the foregoing, your affiant believes that there is probable cause to support violations of federal law by Medford under 18 U.S.C. §§ 111(a)(1) and 1001(a)(2), as well as a violation under 21 U.S.C. § 844(a), and that evidence of those violations is within the Ford van described in Attachment A. The things to be searched for and seized are further described in Attachment B. Thus, your affiant respectfully requests the issuance of a federal search warrant.

**Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct to the best of my knowledge and belief.**

CODA WITT (Digitally signed by CODA WITT, Date: 2022.03.03 15:07:02 -07'00')
Coda P. Witt, Special Agent
USFS, LE&I

March 3, 2022
Executed on (Date)

X  Sworn by Telephone

Date/Time: _____

Camille D. Bibles (Digitally signed by Camille D. Bibles, Date: 2022.03.03 17:12:42 -07'00')
Camille D. Bibles
United States Magistrate Judge

## ATTACHMENT A – THING TO BE SEARCHED

**Description:** A white 1996 Ford Econoline Van, Arizona license plate 4DA6A2A. (The Arizona license plate is registered to Jessica Marie Russo; however, there was an open, signed title in the vehicle suggesting that it had been sold. The registration expired on July 15, 2021.)

**Location:** The van is located at A Tow Truck towing yard, 573 Industrial Drive, Camp Verde, Arizona 86322, which is in the District of Arizona.

# ATTACHMENT B – THINGS TO BE SEARCHED FOR AND SEIZED

1. Any documents, records, letters, and/or notes with Jonathan Kip Medford, John Ander Smith, Jessie, Jessica Marie Russo, and/or Sarah Ann Shea's name on it/them.

2. The title to and any sales documents for the vehicle.

3. Any computers, tablets, or cellular phones or devices located in the vehicle, including any iPhone, smart phone, cell phone, iPad, or computers (e.g., laptops). Any such devices will be seized but separate search warrants will be sought if such devices are located within the vehicle.

4. Any photographs of persons located within the vehicle.

5. Any clothing that appears to belong to an adult male. (The clothing will primarily be photographed.)

6. Indicia of ownership, occupancy, and/or use of the van, including mail (e.g., bills) that may be addressed to the occupant(s) or owner(s) of the van; driver's licenses and identification cards; vehicle titles; vehicle registration; vehicle sales documents; receipts (e.g., gas or service receipts); and insurance cards for the van.

7. Any marijuana and/or paraphernalia (e.g., pipes, bowls, bongs, pushers, rolling papers).

8. As part of the search and documentation of the execution of the search warrant, the van, its contents, and any things seized will be photographed.